WO                                                                              **JWB**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Edward Charles Johnson, | No. CV 08-1322-PHX-MHM (MHB) |
| Plaintiff, | **ORDER** |
| vs. | |
| Dudley, | |
| Defendant. | |

Plaintiff Edward Charles Johnson brought this civil rights action under 42 U.S.C. § 1983 against Arizona Department of Corrections (ADC) Nurse Dudley (Doc. # 1 at 7).[1] Before the Court is Defendant's Motion for Summary Judgment, which is fully briefed (Doc. ## 48, 61, 63). The Court will grant Defendant's motion and terminate this action.

**I.    Background**

Plaintiff filed this § 1983 action on July 17, 2008 (Doc. # 1). In his Complaint, Plaintiff presented one claim for relief (id. at 7, 14-18).[2] Plaintiff alleged that Dudley was deliberately indifferent to Plaintiff's pain by refusing to give Plaintiff "non-over the counter pain killers" after another inmate assaulted him. Plaintiff further claimed that Dudley refused to schedule Plaintiff to see a doctor, and falsely alleged in his medical records that he had

---

[1] Upon screening, the Court dismissed Schriro, Servano, Priece, Sigono, Ohshili, Potts, Doriana, Gurtaraz, John Doe # 1, and Kuntz as Defendants (Doc. # 4 at 10)

[2] The Court dismissed Counts One and Three for failure to state a claim (Doc. # 4 at 9).

been treated the morning of his assault and was referred to her for follow-up treatment (Doc. # 1 at 14-18).

## II. Motion for Summary Judgment

### A. Defendant's Contentions

Dudley now moves for summary judgment, arguing that (1) she was not deliberately indifferent to Plaintiff's serious medical needs and (2) Plaintiff is not entitled to punitive damages (Doc. # 48). In support, Dudley submits a separate Statement of Facts (DSOF); Plaintiff's Public Adult Information Management System (AIMS) Report; the declaration of Dudley, with attachment; Information Report No. L06 0337; the declaration of Lt. Randy Stanridge, with attachment; an excerpt from Plaintiff's deposition; and portions of Plaintiff's medical records (Doc. # 49, Exs. A-F).

Dudley argues that Plaintiff cannot succeed on his deliberate indifference claim because he has not set forth any facts showing that he suffered from a serious medical need. Dudley alleges that after Plaintiff's altercation on February 5, 2008, he was turned away from the complex's medical unit because his needs were not serious (Doc. # 48 at 7). Instead, Plaintiff was evaluated by the pill call nurse at the yard (id.). When Dudley saw Plaintiff on February 7 after he submitted a Health Needs Request (HNR), she did not observe any injuries and did not note any in his records (id.). After her meeting with Plaintiff, Dudley submitted a follow-up sheet for Plaintiff to be seen by a doctor but had no contact with Plaintiff after that meeting. When Plaintiff saw Dr. Lockhart in March, Plaintiff only complained of pain in his shoulder and a swollen knuckle (id. at 8). Plaintiff underwent x-rays, which were normal. Consequently, Dudley maintains that she could not have been deliberately indifferent to any of Plaintiff's serious medical needs.

///

///

**B. Plaintiff's Response**[3]

Plaintiff opposes Defendant's summary judgment motion (Doc. # 61). Plaintiff contends that Dudley refused to provide Plaintiff with affordable medical treatment for his swollen hand, facial lacerations, and injured clavicle. Plaintiff specifically avers that Dudley (1) failed to issue non-over-the-counter pain killers and medical ice; (2) refused to consult with a speciality doctor; and (3) did not schedule Plaintiff with a doctor's appointment (id. at 2).

Plaintiff explains that he was involved in an altercation with another inmate on February 5, 2008 (id. at 3). The other inmate was taken to the complex's medical unit—which Plaintiff describes as similar to an emergency room—and received treatment, while complex medical unit staff turned Plaintiff away, stating that he could receive treatment at the Barchey medical unit. Plaintiff further alleges that, contrary to the incident report, he was never seen by the pill call nurse (id.). And Plaintiff avers that when he was taken to Barchey's medical unit, Dudley, among other nurses, told Plaintiff to put in a HNR to be seen (id. at 5). Later that day, Plaintiff filed an inmate medical complaint against Dudley for denying him treatment (id.).

Plaintiff further claims that when Dudley saw Plaintiff on February 7, she became belligerent and complained to Plaintiff about his filing the medical complaint against her. Plaintiff states that he tried to calm her down but she continued to yell obscenities (id.). Plaintiff then requested non-over-the-counter pain killers, stitches, and ice for his hand, but Dudley refused to provide them and told Plaintiff to leave the office (id. at 6). Plaintiff claims that Dudley was aware of his need for treatment because she could see his injuries and she knew he had previously been denied treatment by both the complex's medical unit and the Barchey medical unit (id.).

---

[3]The Court issued the Notice required under Rand v. Rowland, 154 F.3d 952, 962 (9th Cir. 1998), informing Plaintiff of his obligation to respond to Defendant's motion (Doc. # 50).

1    Plaintiff avers that Dudley told him she would schedule him to see a doctor but she
2    failed to do so (id. at 7). Plaintiff claims that he eventually saw Dr. Lockhart on April 4,
3    2008, who noted a swollen joint on his left hand. Plaintiff also underwent x-rays, which
4    were within normal limits (id. at 8).

5    Plaintiff argues that he sustained a fractured left knuckle, an injured clavicle, and
6    facial lacerations during the February 5 altercation, and Dudley was deliberately indifferent
7    to those serious and obvious injuries when she saw him on February 7 (id. at 11). Further,
8    Plaintiff contends that Dudley intentionally failed to schedule him to see a doctor, which
9    resulted in a two-month delay before seeing Dr. Lockhart (id. at 13). Consequently, Plaintiff
10   argues that his knuckle and clavicle healed during that two-month period, which is why his
11   x-rays were normal (id. at 14).

12   **C.     Defendant's Reply**

13   Dudley maintains that no genuine issue of material fact exists that would preclude
14   summary judgment (Doc. # 63). Dudley asserts that while the parties disagree as to what
15   happened during Plaintiff's February 7, 2008 consultation, there is no evidence that she was
16   aware of and disregarded a substantial risk to Plaintiff's health (id. at 2). Dudley also
17   reiterates that she filled out the correct paperwork to schedule Plaintiff to be seen by a doctor
18   and noted Plaintiff's medical records (id. at 3).

19   **III.   Legal Standards**

20   **A.     Summary Judgment**

21   A court must grant summary judgment "if the pleadings, the discovery and disclosure
22   materials on file, and any affidavits show that there is no genuine issue as to any material fact
23   and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see
24   also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Under summary judgment
25   practice, the movant bears the initial responsibility of presenting the basis for its motion and
26   identifying those portions of the record, together with affidavits, that it believes demonstrate
27   the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323; Devereaux v.
28   Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).

1       If the movant meets its burden with a properly supported motion, the burden then shifts to the nonmovant to present specific facts that show there is a genuine issue for trial. Fed. R. Civ. P. 56(e); Auvil v. CBS "60 Minutes", 67 F.3d 816, 819 (9th Cir. 1995); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The nonmovant need not establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968). By affidavit or as otherwise provided by Rule 56, the nonmovant must designate specific facts that show there is a genuine issue for trial. Anderson, 477 U.S. at 249; Devereaux, 263 F.3d at 1076. The nonmovant may not rest upon the pleadings' mere allegations and denials, but must present evidence of specific disputed facts. See Anderson, 477 U.S. at 248.

      At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. Id. at 249. In its analysis, the court must believe the nonmovant's evidence, and draw all inferences in the nonmovant's favor. Id. at 255.

### B. Deliberate Indifference

      To prevail on an Eighth Amendment medical care claim, a prisoner must demonstrate "deliberate indifference to serious medical needs." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing Estelle v. Gamble, 429 U.S. 97, 104 (1976)). A plaintiff must show (1) a "serious medical need" by demonstrating that failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain and (2) that the defendant's response was deliberately indifferent. Jett, 439 F.3d at 1096 (citations omitted).

      A "'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc) (internal citation omitted). Indications that a prisoner has a serious need for medical treatment include the

existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment, the presence of a medical condition that significantly affects an individual's daily activities, or the existence of chronic and substantial pain. McGuckin, 974 F.2d at 1059-60.

To act with deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate health; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. Farmer v. Brennan, 511 U.S. 825, 837 (1994). In the medical context, deliberate indifference may be shown by a purposeful act or failure to respond to a prisoner's pain or possible medical need and harm caused by the indifference. Jett, 439 F.3d at 1096. Prison officials are deliberately indifferent to a prisoner's serious medical needs if they deny, delay, or intentionally interfere with medical treatment. Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990). But a delay in providing medical treatment does not constitute an Eighth Amendment violation unless the delay was harmful. Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989) (citing Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985) (per curiam)). To establish deliberate indifference, a prisoner must show that the delay led to further injury. See Hallett v. Morgan, 296 F.3d 732, 746 (9th Cir. 2002).

"[A] mere 'difference of medical opinion . . . [is] insufficient, as a matter of law, to establish deliberate indifference.'" Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004) (citation omitted). Therefore, to prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the course of treatment the doctors chose was medically unacceptable in light of the circumstances and that it was chosen in conscious disregard of an excessive risk to plaintiff's health. Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

**IV.    Deliberate Indifference Analysis**

Plaintiff's claim is that Dudley was deliberately indifferent to his serious medical needs after he was involved in an altercation on February 5, 2008 (Doc. # 1 at 7, 14-18). The

Court finds that Dudley is entitled to summary judgment for the following reasons.

The evidence in the record reflects that the first time Dudley saw Plaintiff for treatment purposes was February 7, 2008 (Doc. # 62, Ex. E, Pl. Dep. at 22:19-22). Plaintiff's conclusory statement that Dudley was "present" on February 5 when he was taken to the complex's medical yard and told to submit an HNR does not establish that she was aware of Plaintiff or had any role in whether he received treatment that day (Doc. # 61 at 5). Indeed, Plaintiff's deposition testimony confirms that he had no interaction with Dudley on February 5. Plaintiff testified that the correctional officer told him that the "nurses" instructed Plaintiff to submit an HNR to be seen (Doc. # 62, Ex. E, Pl. Dep. at 22:2-13). It is clear that Plaintiff had no personal interaction with Dudley that day, nor does Plaintiff present any evidence that she was aware of Plaintiff's presence and need of emergency medical treatment. When a prisoner attempts to hold a prison employee responsible for deliberate indifference, the prisoner must establish individual fault. Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988). Sweeping conclusory allegations will not be sufficient to prevent summary judgment. Id. "The prisoner must set forth specific facts as to each individual defendant's deliberate indifference." Id. at 634. He must prove that the specific prison official was deliberately indifferent and that this indifference was the actual and proximate cause of the injury. Id. There is simply no evidence that Dudley was involved in any decision whether to treat Plaintiff on February 5.[4]

Consequently, the crux of this case is whether Dudley was deliberately indifferent to a serious medical need during Plaintiff's appointment on February 7. And although the parties strenuously dispute what happened during that appointment, the Court finds that dispute is not material because there is no evidence from which a jury could infer that Dudley was aware of and disregarded a substantial risk to Plaintiff's health.

Plaintiff asserts that his medical needs—a fractured left knuckle, an injured clavicle,

---

[4] Plaintiff also disputes that he was seen by the pill call nurse on February 5 (Doc. # 61 at 11). But this dispute is immaterial because there is no evidence that Dudley had any involvement in Plaintiff's treatment prior to February 7.

and facial lacerations—were obvious and Dudley had notice of them because he submitted an HNR on February 5 requesting treatment (Doc. # 61 at 6). But these arguments are insufficient to defeat summary judgment for several reasons. First, there is no evidence as to the substance of the February 5 HNR that demonstrates Dudley was aware of a *serious* medical need, as opposed to merely a request to be seen. Second, there is no evidence—apart from Plaintiff's speculation—that his knuckle was ever broken or that his clavicle required any treatment. Indeed, the medical evidence in the record demonstrates that when Plaintiff saw Dr. Lockhart in April, his x-rays were normal and Plaintiff never requested or received any further treatment (Doc. # 61 at 8). Nor does Plaintiff elaborate on how any facial lacerations (that were already two days old) would have put Dudley on notice that they required immediate treatment.

In short, Plaintiff simply concludes that his need for treatment was obvious to Dudley, without explaining how his injuries were obvious or providing any evidence to demonstrate that he needed emergent medical care. These conclusory allegations are insufficient to show Plaintiff had an objectively serious medical need and purposefully ignored it.

Plaintiff also makes much of his demand for non-over-the-counter pain medication. But, again, Plaintiff's claim is predicated on his *subjective* belief that he was in need of treatment and non-over-the-counter pain medication. He fails to provide any competent evidence that his needs were *objectively* serious and that Dudley purposefully ignored them. Jackson, 90 F.3d at 332.

There is also no evidence to support Plaintiff's speculation that Dudley deliberately failed to schedule him for a follow-up doctor's appointment. His medical records reflect that she completed the necessary paperwork to schedule Plaintiff for an appointment (Doc. # 49, Ex. F at 3). And Plaintiff offers no evidence that she *deliberately* failed to schedule him to see a doctor. Broughton, 622 F.2d at 460 (finding that negligence is insufficient to establish a constitutional violation).

Finally, and most importantly, Plaintiff's deliberate indifference claim fails because he has not demonstrated that he suffered any harm as a result of the delay in treatment.

1  Plaintiff's April x-rays were normal, and Plaintiff never requested any other treatment for his
2  clavicle or hand.  And even assuming that Plaintiff suffered a serious medical need, any delay
3  in providing medical treatment does not constitute deliberate indifference unless the delay
4  was harmful.  Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989) (quoting Shapley v.
5  Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985) (per curiam)); see
6  Hallett v. Morgan, 296 F.3d 732, 746 (9th Cir. 2002) (the Eighth Amendment is only violated
7  if "delays occurred to a patient with problems so severe that delays would cause significant
8  harm that Defendants should have known this to be the case").  Here, there is no evidence
9  that Plaintiff suffered any harm from any delay in treatment.  As a result, Plaintiff's
10 deliberate indifference claim fails and Dudley is entitled to summary judgment.

**V.     Remaining John Doe Defendants**

In the Court's Screening Order, the Court determined that Plaintiff sufficiently stated a claim against John Doe # 2, John Doe # 3, Jane Doe # 1, Jane Doe # 2, and Jane Doe # 3, but instructed Plaintiff that service could not be ordered against them (Doc. # 4 at 6).  The Court directed Plaintiff to move to amend his Complaint to name these fictitious Defendants; the Court's Scheduling Order included deadlines within which to move to amend his Complaint. Plaintiff failed to timely file an amended pleading or timely seek leave to properly name these Defendants.  Accordingly, the Court will also dismiss John Doe # 2, John Doe # 3, Jane Doe # 1, Jane Doe # 2, and Jane Doe # 3.

**IT IS ORDERED**:

(1)    The reference to the Magistrate Judge is **withdrawn** as to Defendant's Motion for Summary Judgment (Doc. # 48).

(2)    Defendant's Motion for Summary Judgment (Doc. # 48) is **granted**.

(3)    John Doe # 2, John Doe # 3, Jane Doe # 1, Jane Doe # 2, and Jane Doe # 3 are **dismissed**.

/ / /

(4)     Plaintiff's action is dismissed with prejudice and the Clerk of Court must enter judgment accordingly.

DATED this 9th day of June, 2010.

*Mary H. Murguia*
United States District Judge